PETER LANG et al

*v.*

LOUIS BELLOFF et al.

1. An infant party to a suit cannot appoint an attorney or solicitor to appear and represent him therein. He can only appear by next friend when plaintiff, or guardian *ad litem* when defendant.

2. The authority of a solicitor, or a guardian *ad litem*, or next friend of an infant defendant, to represent the infant in the conduct of the cause, expires with the minority of the infant; and an agreement by such a solicitor with the solicitor of the opposite party to let the suit sleep, made after the majority of the former infant and without his authority, will not bind him.

3. A suit in which complainant has taken no steps in six years, during which time all the defendants and their witnesses have died, will be dismissed for want of prosecution.

On motion to dismiss bill for want of prosecution, under the thirtieth rule.

*Mr. James A. Gordon,* for the motion.

*Mr. Williard P. Voorhees, contra.*

PITNEY, V. C.

The bill was filed on the 27th of February, 1888, and calls for answers under oath. Those answers were filed on the 24th of May, 1888.

The bill was founded on a judgment recovered by complainant against the defendant Louis Belloff, on the 26th day of December, 1874, and the object of it was to procure a declaration and decree of this court that certain real estate situate in Middlesex county, the title whereof was in the defendant William Belloff, a son of Louis Belloff, was purchased with the funds of said Louis and held in trust for him, and that the same be devoted to the payment of the complainants' judgment.

William Belloff was an infant a little short of twenty-one years old at that time. The premises had been conveyed to

William Belloff by Louis Bellof, a brother of the judgment-debtor, John Belloff, and he was made a party on that account,. and discovery was asked of him.

Louis Belloff and John Belloff, and Louis Belloff as guardian *ad litem* of the infant William Belloff, answered fully, under oath, setting out that the moneys with which the property was purchased were the moneys of the wife of Louis Belloff, one Catharine Belloff, the mother of William, which moneys said Catharine received from her father, one Conrad Munch, and that the conveyance was intended by her as a gift to her son William.. The answer further showed that the title passed through John Belloff for the purpose of convenience in securing part of the purchase-money by mortgage.

William Belloff attained majority on the 28th of August,. 1888, a few months after the filing of the answer, and he died. in May, 1894. His mother, Catharine, died in April, 1893. Louis Belloff died in January, 1894.

When the title passed to William Belloff the premises were subject to a mortgage for $1,000, which finally came to be held by Rutgers College, and, later on, William placed a second mortgage for $1,200 upon them to one Ackerman, and then made a: conveyance of a one-half interest in them to his sister, Mrs. Clickner, subject to the two mortgages, and by his will devised the other one-half to his wife.

No·proceedings whatever were had under the bill filed by the complainants until a short time ago, when they attempted to revive the suit by bringing in the parties upon whom the title devolved by the conveyances and death already stated, and also by bringing in the administrator of Louis Belloff. The immediate occasion of this action on the part of the complainants was the fact that foreclosure proceedings had been commenced by the holder of the first mortgage, and that the property was about to be sold thereunder, and that there was a prospect of some surplus. money. This movement on the part of the complainants was met by a movement on the part of Ackerman, the second mortgagee, and of Mrs. Clickner and the widow of William Belloff,. to be made parties, and to dismiss the bill for want of prosecution..

Lang *v.* Belloff.

The ground relied upon by the complainants, in answer to this motion, was that the cause had slept in pursuance of a verbal arrangement between counsel. In support of that position they bring the affidavit of the solicitor who appeared for the defendants, in which he swears that he was retained by Louis Belloff, John Belloff, and also in behalf of William Belloff, to make defence, and accordingly filed the answer; and he says that he had many conversations with complainants' counsel from time to time regarding the suit, and that the time for taking the testimony was many times, by mutual parol agreements between them, deferred, partly because there appeared to be a prospect of a settlement of all the matters in litigation, and partly because neither party was ready to proceed; and that, owing to the minority of William Belloff, money could not be raised on the property by way of mortgage, and it was therefore impossible to arrange any settlement of the suit even if the parties had agreed to do so and had agreed upon the terms of compromise; that, as a matter of fact, no compromise was ever agreed to; that the matter, by mutual consent and understanding, was allowed to sleep during the minority of the infant William Belloff, and that it was distinctly understood that no advantage should be taken by either party as against the other by reason of the delay in pressing the suit, or motion made on either side on account thereof.

It will be seen that this affidavit, which may be dealt with as an admission by the defendants' solicitor, is confined to negotiations pending the minority of William Belloff, which minority expired in the fall of 1888. The solicitor for the defendants was retained by the father and uncle, and not by the infant, as indeed he could not be, the well-settled rule being that an infant cannot appoint an attorney or a solicitor, and there is no proof offered before me that he ever was retained or appointed by the infant, and he does not admit any negotiations or agreement for delay after the maturity of the infant.

The complainants' solicitor, in his affidavit, goes further and swears that he was visited by the defendant Louis Belloff, and that talks were had of a settlement, and that a loan should be obtained upon the premises for that purpose, but that no loan

Lang v. Belloff.

could be made on account of the minority of William. He says that there were frequent conferences and meetings between him and the defendants' solicitor up to the time of the death of Louis Belloff, and that it was agreed by the said solicitors that no advantage should be taken one of the other on account of any delay.

Waiving for the present the rule of this court that verbal agreements made by counsel, not in the presence of the court, are not to be considered by the court, and taking the affidavit of the solicitor of the defendants as an admission, and the affidavit of the solicitor of the complainants as true, and the verbal agreement therein stated to be binding, the question remains, Upon whom is it binding? There is no pretence of any interviews between the complainants' solicitor and William Belloff; nor is there any pretence that William Belloff, after he became of age, ever employed and retained the original solicitor of the defendants, or that such solicitor had any authority whatever to represent William Belloff except what he obtained upon his original retainer by the father and guardian. That retainer expired with the majority of William Belloff, and after that he had no further authority to represent him.

It is well settled, as before observed, that an infant cannot appoint an attorney or a solicitor, and a retainer by his guardian *ad litem* expires with his majority. There must be an appointment and retainer after the infant became of age. This leaves the case bare of any consent on the part of William Belloff to the delay of the complainants in prosecuting their suit.

In the absence of the thirtieth rule, I should say, agreeing in that regard with what Vice-Chancellor Van Fleet said in *Sebring* v. *Sebring, 16 Stew. Eq. 59,* that the court would " be bound, in the absence of any express regulation on this subject, and simply in the enforcement of a general principle of justice, to dismiss the complainants' bill in any case where it appeared he had been guilty of such extraordinary negligence as has occurred in this case."

They have allowed the suit to rest until every witness who knew anything about the facts and circumstances of the case is

dead. This is the principal reason why this court declines to aid a party who has been guilty of laches in cases where the statute of limitations does not apply. Besides, in this case, the rights of other parties have intervened, to wit, the mortgage of Ackerman.

The neglect of the defendants to take advantage of the complainants' delay by moving sooner to dismiss the bill furnishes no excuse to the complainants. That aspect of the case was considered and disposed of by Vice-Chancellor Van Fleet in *Sebring* v. *Sebring, supra.*

Nor was the movement on the part of the complainants to bring in the administrator of Louis Belloff, and the application by the new defendants to be made parties, which was coincident in time with their motion to dismiss, any such proceeding in the cause as would bring the case within the exception mentioned by Chancellor Runyon in *Howell* v. *The Insurance Co., 9 C. E. Gr. 238.* There the defendant had appeared without protest at the examination of witnesses on the part of complainant. Evidence was taken on the part of the complainant without protest from defendant long after the delay provided for by the rule, and the case was brought on for final hearing, without objection.

I think the complainants' bill must be dismissed, with costs.